CARMELLA PISCIOTTA, FALSELY NAMED CARMELLA BUCCINO. PLAINTIFF, v. CHARLES PASQUALE BUCCINO, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided July 14, 1952.

*Mr. Benjamin M. Ratner*, attorney for plaintiff.

PINDAR, A. M. This is a cause for nullity and voidance of plaintiff's marriage to defendant on July 14, 1951, grounded on fraud within our general chancery jurisdiction and as now sanctioned by statute, *N. J. S.* 2A:34–1(*g*). Succinctly, the charge concerns an alleged preconceived "decision and resolution that he would not accord to plaintiff the right of full, natural and complete sexual intercourse." It is further said such reservation was not communicated to plaintiff who married defendant in good faith relying upon the assumption of fulfillment of the obligations of the marriage contract. Furthermore, such fraud specifically includes defendant's failure to afford plaintiff "the benefit and enjoyment of offspring which would arise in the natural course of events if the marriage was fully and naturally consummated through sexual intercourse." It is alleged, moreover, that the stated fraud was unknown to plaintiff; that defendant's refusal continued notwithstanding plaintiff's pleas; that the marriage has never been consummated and that had plaintiff due knowledge of defendant's disposition she would not have entered into the marriage. No children were born of the relationship, although each party had issue born of their prior marriages.

It should be noted that the parties cohabited together in this relationship until January 23, 1952 (a period of six months and nine days) when defendant left following an

argument over his declaration that "he did not want children or to support plaintiff and a child." Also that upon defendant's return a few days later, after a similar argument, he "packed and walked out." No resumption has occurred thereafter.

Defendant was personally served with process but filed no appearance or answer, and upon due assignment the issue was heard *ex parte*.

The record proof has specific relation to a mutual understanding between the parties before marriage that the event of plaintiff's conception be postponed to await their existing common financial capacity, that is to say: "until our bills were paid." Plaintiff's complete acquiescence in that prenuptial assent is conceded. In fact, she testified that throughout the period of cohabitation the marriage functioned under the declared marital undertaking, and in accordance with occurring unnatural sexual relations—by the use of contraceptives. During the six months of married life plaintiff never by way of word or action objected to a failure of consummation or complained of unsatisfied sexuality.

Plaintiff, by way of retrospection, proffers the circumstance of defendant's fraud, in that, he failed to abide by the aforestated agreement. As proof to sustain her claim she contends that on an occasion in January, 1952, when she informed defendant of her wish to end the prevailing marital conduct he refused to do so, declaring that it never was his intention to accord plaintiff the right to have children.

As appears in the record the prepossession to void a lawful and binding marriage is not unilaterally or wholly chargeable to defendant. Whatever the substance of his fraud may have been, it is not clear or convincing that plaintiff did not participate in it. She cannot now in view of her evident personal behavior assume to maintain a faultless position toward such an unnatural and unusual marital relationship. Certainly, if the marriage contract was fraudulent its character was adaptable to both parties. It will not be gainsaid that their contractual status lacked good policy and sound

morality. Unless it is clearly shown that the fraud of one spouse was singularly the cause for nullity to the exclusion of the other's contribution thereto, a court of equity will deny voidance under the maxim *in pari delicto petior est conditio defendentis.*

Moreover, the proof *sub judice* is vague and conjectural as to (1) when mutual acquiescence to preclude childbirth by means of prevention ended and when defendant's duty to accord commenced, and (2) what financial situation was to exist to duly terminate the period reserved by the parties before they would commence what plaintiff terms natural sexual relations. It will be recalled their agreement was to continue "until *our* bills were paid." Plaintiff testified to payment of her bills, but that circumstance was only partial performance and doubtful termination of their understanding. There is an utter lack of proof respecting the situation of defendant's bills, as to amount, payment, or capacity, and the absence of such evidence belies the premise of defendant's fraud. Rather it is clear and I find as a fact that plaintiff's ground for nullity comprehends a matter subsequent to the marriage and therefore not just or sufficient reason to sustain the cause of the complaint.

■■ The significant factual proof eliminates any need to determine whether or not the marriage *sub judice* was consummated. In either case, the evidence does not constitute sufficient fraud to annul with regard to the whole status of both parties under the joint preconception which induced the contract. Each case must be evaluated by and adjudicated upon its own facts and circumstances. When considering the proofs in a matrimonial cause the court will exercise great scrutiny and strict concern in the interest of public policy. Any other procedure would encourage, if not establish, a dangerous precedent and open the door to an easy method of setting aside marriage contracts.

Accordingly, the complaint will be dismissed.